WILLIAM M. WELCH, II
Chief, Public Integrity Section

NICHOLAS A. MARSH
EDWARD P. SULLIVAN
Trial Attorneys
Public Integrity Section
United States Department of Justice
1400 New York Ave. NW, 12th Floor
Washington, D.C. 20005
(202) 514-1412

JOSEPH W. BOTTINI
JAMES A. GOEKE
Assistant U.S. Attorneys
District of Alaska
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska 99513-7567
(907) 271-5071

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>BILL J. ALLEN,<br><br>　　　　　　Defendant. | No.<br><br>COUNT 1:<br>CONSPIRACY TO COMMIT<br>EXTORTION UNDER COLOR OF<br>OFFICIAL RIGHT, BRIBERY, AND<br>HONEST SERVICES FRAUD<br>　Vio. 18 U.S.C. § 371<br><br>COUNT 2:<br>BRIBERY CONCERNING PROGRAMS<br>RECEIVING FEDERAL FUNDS<br>　Vio. 18 U.S.C. § 666(a)(2) and § 2<br><br>COUNT 3:<br>CONSPIRACY TO IMPAIR AND<br>IMPEDE THE INTERNAL REVENUE<br>SERVICE<br>　Vio. 18 U.S.C. § 371<br><br>*FILED UNDER SEAL* |

**INFORMATION**

The United States of America informs the Court that:

## COUNT ONE

## CONSPIRACY TO COMMIT EXTORTION UNDER COLOR OF OFFICIAL RIGHT, BRIBERY, AND HONEST SERVICES MAIL AND WIRE FRAUD
(18 U.S.C. § 371)

### General Allegations

At all times relevant hereto:

1.BILL J. ALLEN (hereinafter "ALLEN" or "Defendant") was the Chief Executive Officer and principal owner of VECO Corporation.

2.VECO Corporation ("VECO") was originally incorporated in 1979 as VECO International, Inc., a Delaware corporation. The name was changed to VECO Corporation in 1995. VECO was a multi-national corporation that provides services (including project management, engineering, procurement, construction, operations and maintenance) to the energy, resource and process industries and to the public sector. VECO employed approximately 4,000 people in various projects worldwide, and was comprised at various times of the following companies: (1) VECO Alaska, Inc.; (2) VECO Construction, Inc.; (3) VECO Controls, Inc.; (4) VECO Environmental & Professional Services; (5) VECO Equipment, Inc.; (6) VECO Middle East, Inc.; (7) VECO Operations, Inc.; (8) VECO Pacific, Inc.; (9) VECO Products, Inc.; (10) VECO Properties, Inc.; (11) VECO Services, Inc.; and (12) Southwest VECO, Inc.

3.RICHARD L. SMITH, also known as RICK SMITH, was the Vice President of Community and Government Affairs for VECO.

4.VECO Executive A was an executive of VECO.

5.VECO Executive B was an executive of VECO.

2

6. "State Representative A" is an elected member of the Alaska State House of Representatives, and has served from 1995 to the present.

7. "State Representative B" was, from 1992 to 2006, an elected member of the Alaska State House of Representatives.

8. "State Representative C" was, from 2002 to 2006, an elected member of the Alaska State House of Representatives.

9. "State Senator A" is an elected member of the Alaska State Senate. State Senator A was first elected to the Alaska State Senate in 2000.

10. "State Senator B" was, from 2001 to 2006, a member of the Alaska State Senate.

**The Conspiracy**

11. Beginning in or about January 2002 and continuing until in or about August 30, 2006, in the District of Alaska and elsewhere, the defendant, BILL J. ALLEN, together with RICHARD L. SMITH, State Representative A, State Representative B, State Representative C, State Senator A, State Senator B, other certain elected public officials, and others known and unknown, did knowingly and unlawfully conspire, confederate, and agree together and with each other:

(A) to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce by extortion, that is, to unlawfully obtain under color of official right money and other financial benefits for State Representative A, State Representative B, State Representative C, State Senator B, and a state elected official, or each elected public official's office, in agreement

3

for the performance of official acts by each elected public official, in violation of Title 18, United States Code, Section 1951(a);

(B) to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, anything of value from any person for State Representative A, State Representative B, State Representative C, State Senator B, and a state elected official, each an elected member of the Alaska State Legislature and an agent of the government of the State of Alaska, an entity that received more than $10,000 in federal funding during the calendar years 2002, 2003, 2004, 2005, and 2006, with the intent that State Representative A, State Representative B, State Representative C, State Senator B, and a state elected official each would be influenced and rewarded in connection with any business, transaction, or series of transactions of $5,000 or more of the State of Alaska, in violation of Title 18, United States Code, Section 666(a)(1)(B);

(C) to corruptly give, offer, and agree to give, something of value to State Representative A, State Representative B, State Representative C, State Senator B, and a state elected official, each an elected member of the Alaska State Legislature and an agent of the government of the State of Alaska, with the intent that State Representative A, State Representative B, State Representative C, State Senator B, and a state elected official each be influenced and rewarded in connection with a business, transaction, or series of transactions of $5,000 or more of the State of Alaska, an entity that received more than $10,000 in federal

funding during calendar years 2002, 2003, 2004, 2005, and 2006, in violation of Title 18, United States Code, Section 666(a)(2); and

(D) to use the United States mails and interstate wire communications to facilitate any scheme in which financial benefits were provided to State Representative B, State Representative C, and State Senator B, thereby depriving the public citizens of the State of Alaska of the honest services of State Representative B, State Representative C, and State Senator B, in violation of Title 18, United States Code, Sections 1341, 1343, and 1346.

## Objects of the Conspiracy

12. It was an object of the conspiracy for ALLEN and SMITH to offer and provide things of value to State Representative A, State Representative B, State Representative C, State Senator B, the state elected official, and other certain elected public officials, in exchange for each elected public official agreeing to take, and ultimately taking, official acts to benefit ALLEN and VECO.

## Overt Acts

13. In furtherance of the conspiracy, and in order to effect its objects, ALLEN committed, among others, the following overt acts in the District of Alaska and elsewhere:

14. Between in or about January 2004 and on or about August 30, 2006, ALLEN provided financial benefits to State Representative A, an elected member of the Alaska State Legislature, in exchange for State Representative A's agreement to perform, and eventual performance of, official acts requested by ALLEN, SMITH, and VECO. These financial benefits

5

included, among other things, multiple cash payments by ALLEN and SMITH to State Representative A.

15. Between in or about January 2004 and on or about August 30, 2006, ALLEN provided financial benefits to State Representative B, an elected member of the Alaska State Legislature, in exchange for State Representative B's agreement to perform, and eventual performance of, official acts requested by ALLEN, SMITH, and VECO. These financial benefits included, among other things, multiple cash payments by ALLEN to State Representative B, promises of future VECO employment by ALLEN and SMITH to State Representative B, and payments made through a company owned by State Representative B that were in fact for the purpose of obtaining State Representative B's official support on matters pending before the Alaska State Legislature. Some of the communications related thereto involved the use of interstate telephone calls.

16. Between in or about April 2006 and on or about August 30, 2006, after being solicited by State Representative C for post-legislative employment with VECO, ALLEN agreed to provide State Representative C with post-legislative employment in exchange for State Representative C's agreement to perform, and eventual performance of, official acts requested by ALLEN, SMITH, and VECO. Some of the communications related thereto involved the use of the United States mails.

17. Between in or about June 2006 and on or about August 30, 2006, after being approached by State Senator A with a scheme in which ALLEN and VECO could provide financial benefits to the state elected official in order to obtain the state elected official's official support on matters pending before the Alaska State Legislature, ALLEN had an in-person

6

meeting with State Senator A and the state elected official in which ALLEN and State Senator A outlined a scheme in which the state elected official could receive financial benefits from VECO in exchange for the state elected official's agreement to take official acts requested by ALLEN, SMITH, and VECO.

18. Between in or about 2002 and on or about August 30, 2006, ALLEN provided financial benefits to State Senator B, an elected member of the Alaska State Legislature, in exchange for State Senator B's agreement to perform, and eventual performance of, official acts requested by ALLEN, SMITH, and VECO. These financial benefits included, among other things, making payments to a company owned by State Senator B that, while ostensibly for "consulting" services, were in fact for the purpose of obtaining State Senator B's official support on matters pending before the Alaska State Legislature and taking official acts as requested by ALLEN, SMITH, and VECO.

## COUNT TWO

### BRIBERY CONCERNING PROGRAMS RECEIVING FEDERAL FUNDS
### (18 U.S.C. § 666(a)(2) and § 2)

19. In calendar years 2002, 2003, 2004, 2005, and 2006, the State of Alaska received in excess of $10,000 from the United States government under Federal programs involving grants, subsidies, loans, guarantees, insurance, and other forms of Federal assistance.

20. Between approximately in or about January 2002 and on or about August 30, 2006, in the District of Alaska and elsewhere, the defendant, BILL J. ALLEN, did knowingly and corruptly give, offer, and agree to give, something of value to State Representative A, State Representative B, State Representative C, and State Senator B, each an elected member of the

7

Alaska State Legislature and an agent of the government of the State of Alaska, with the intent that each elected public official be influenced and rewarded in connection with a business, transaction, or series of transactions of $5,000 or more of the State of Alaska.

All of which is in violation of Title 18, United States Code, Sections 666(a)(2) and 2.

## COUNT THREE

## CONSPIRACY TO IMPEDE AND IMPAIR THE INTERNAL REVENUE SERVICE
## (18 U.S.C. § 371)

21. Beginning in approximately 2004, and continuing thereafter up to and including approximately August 30, 2006, in the District of Alaska, and elsewhere, ALLEN did unlawfully, willfully, and knowingly conspire, combine, confederate, and agree with other individuals, including SMITH, VECO Executive A, and VECO Executive B, to defraud the United States of America by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the United States Department of the Treasury in the ascertainment, computation, assessment, and collection of federal income taxes by:

(a) falsely characterizing the payment of specific financial bonuses paid by VECO to certain executive employees of the company as legitimate compensation, when in truth and in fact, the payment of these bonuses represented the unlawful reimbursement of individual political campaign contributions made by the executive employees to both federal and state candidates and campaigns; and

(b) with respect to certain corporate expenditures made for the personal benefit of VECO executives, officers, and employees, including ALLEN, falsely characterizing such expenditures as legitimate corporate expenditures.

8

22. In furtherance of the conspiracy, and to effect the objects thereof, the following overt act, among others, was committed in the District of Alaska and elsewhere:

23. In or about 2005 and in or about 2006, ALLEN authorized the payment of a "special bonus" of corporate funds to certain VECO executives, including VECO Executive A and VECO Executive B, knowing that the payment of this bonus represented the unlawful use of corporate funds to make federal political campaign contributions made by VECO executives. ALLEN understood that VECO routinely reported employee compensation, including bonuses, as legitimate corporate expenditures on VECO filings with the Internal Revenue Service of the United States Department of Treasury.

24. On or about February 25, 2006, ALLEN directed VECO Executive B to classify a personal expense of ALLEN's as a corporate expense in VECO's corporate accounts, knowing and intending that such personal expense would ultimately be falsely recorded as a corporate expenditure on VECO's yearly filing with the Internal Revenue Service of the United

// //

// //

// //

// //

// //

9

States Department of Treasury.

All of which is in violation of Title 18, United States Code, Section 371.

DATED: 5/4/07

WILLIAM M. WELCH, II
Chief, Public Integrity Section

*[signature]*
NICHOLAS A. MARSH
EDWARD P. SULLIVAN
Trial Attorneys
Public Integrity Section
Criminal Division
United States Department of Justice
1400 New York Avenue N.W.
Washington, D.C. 20005

*[signature]*
JOSEPH W. BOTTINI
JAMES A. GOEKE
Assistant United States Attorneys
District of Alaska
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska 99513-7567
(907) 271-5071

10