1                UNITED STATE DISTRICT COURT
                   DISTRICT OF ALASKA

2

    UNITED STATES OF AMERICA,   .    Case 3:07-cr-00057-JWS

3                        .
       Plaintiff,        .    Anchorage, Alaska

4                        .    May 7, 2007
    vs.                  .    9:11 o'clock a.m.

5                        .
    BILL J. ALLEN,        .    **ARRAIGNMENT/ENTRY OF PLEA ON**

6                        .    **FELONY INFORMATION (SEALED**
       Defendant.      .    **ARRAIGNMENT/ENTRY OF PLEA ON**

7    . . . . . . . . . . . . .   **FELONY INFORMATION)**

8                 TRANSCRIPT OF PROCEEDINGS

9          BEFORE THE HONORABLE JOHN W. SEDWICK
           UNITED STATES DISTRICT JUDGE

10

    APPEARANCES:

11

    For the Plaintiff:       NICHOLAS MARSH, ESQ.

12                        U.S. Department of Justice, Criminal
                          Division

13                        1400 New York Avenue NW, 12th Floor
                       Washington, D.C.   20005

14                        (202)514-1412

15                        JOSEPH W. BOTTINI, ESQ.
                       U.S. Attorney's Office

16                        222 West Seventh Avenue, #9
                       Anchorage, Alaska   99513

17                        (907) 271-5071

18     Probation Officer:      KAREN BREWER
                       U.S. Probation/Pretrial Service

19                        222 West Seventh Avenue, #48
                       Anchorage, Alaska   99513

20                        (907) 271-5494

21     For the Defendant:      ROBERT C. BUNDY, ESQ.
                       Dorsey & Whitney, LLC

22                        1031 West Fourth Avenue, Suite 600
                       Anchorage, Alaska   99501

23                        (907) 276-4557

24     For the Anchorage Daily   D. JOHN McKAY, ESQ.
    News:                  117 East Cook Avenue

25                        Anchorage, Alaska 99501
                       (907) 274-3154

     T M Transcribing 1980 Commodore Drive Anchorage, Alaska 99507

```
 1    APPEARANCES (Continued):

 2    Court Recorders:          SUZANNETTE DAVID
                                CARLA POORMAN
 3                              U.S. District Court
                                222 West Seventh Avenue, #4
 4                              Anchorage, Alaska  99513
                                (907) 677-6111
 5                              (907) 677-6144

 6    Transcription Service:    TERESA MIELKE
                                T M Transcribing
 7                              1980 Commodore Drive
                                Anchorage, Alaska  99507
 8                              (907) 277-8591

 9

10

11

12

13

14    Proceedings recorded by digital sound recording, transcript
      produced by transcription service.
15

16

17

18

19

20

21

22

23

24

25
```

T M Transcribing 1980 Commodore Drive Anchorage, Alaska 99507

1          **ANCHORAGE, ALASKA – MONDAY, MAY 7, 2007**

2          (Defendant present)

3   (Log 10:04:34)

4          THE CLERK:  All rise.  His Honor the Court, the United

5   States District Court for the District of Alaska is now in

6   session with the Honorable John W. Sedwick presiding.  Please be

7   seated.

8          THE COURT:  Good morning.

9          COUNSEL:  Good morning, Your Honor.

10         THE COURT:  We're here this morning for proceedings in

11  an Anchorage criminal case, Number 3-07-cr-057.  The court has

12  been alerted to the fact that representatives of the news media

13  would like to be heard in connection with what we have to do

14  here this morning.  The record in this case at this point in

15  time is still sealed.  I see Mr. McKay is here.  Is there anyone

16  else here who's representing the interests of the public in

17  gaining access to this?

18         MR. McKAY:  Your Honor, to my knowledge there's only a

19  rumor of notice of this hearing so nobody else knows about it

20  that I know of.

21         THE COURT:  All right.

22         MR. McKAY:  So I --

23         THE COURT:  Well, we definitely need to deal with the

24  issue which has to be resolved before we can really go any

25  further.  Now, as -- I guess at this point I need to hear from

T M Transcribing 1980 Commodore Drive Anchorage, Alaska 99507

1    the government with respect to why -- well, let me back up once

2    and give everybody a little bit of assurance.  Mr. McKay, if you

3    wouldn't mind, would you just come forward and --

4            MR. McKAY:  Yes, sir.

5            THE COURT:  Somewhere.  You can stand at the lectern.

6    In the past, Mr. McKay, we've generally proceeded with the

7    understanding that in arguing your client's case you will be

8    allowed access to information that is not yet public, but you've

9    in past -- in past -- on past occasions you have represented to

10   the court as the -- a member of the bar of this court that you

11   will not disclose that information unless and until the court

12   authorizes you to do so.  Are you willing to proceed on that

13   basis this morning?

14           MR. McKAY:  I think so, Your Honor.  I guess my

15   hesitation is that to my knowledge -- the short answer is yes,

16   Your Honor.  But it's obviously without waiving any objection as

17   to whether any of this should be public.  And my understanding

18   is that the -- because of the sequence of events this ended up

19   being scheduled as a sealed hearing because it was based on

20   sealed pleadings or sealed documents.  But at this point there

21   may be no objection from either side to having any further

22   proceedings from this moment unsealed.

23           THE COURT:  Well, I see some people nodding their

24   heads up and down.  Maybe I should simply inquire, does the

25   government wish to continue with this matter as a sealed

1   proceeding?

2          MR. BOTTINI:  Your Honor, it is not our -- our

3   interest to keep it sealed at this time.  Our reason for sealing

4   it, as you saw in the motion to seal, had to do with events that

5   are now taken care of, so --

6          THE COURT:  All right.

7          MR. BOTTINI:  -- it is our application to unseal this.

8          THE COURT:  And will the same be true with respect to

9   Mr. Smith then?

10          MR. BOTTINI:  Yes, sir.

11          THE COURT:  All right.  Now, Mr. Bundy, I gather you

12   have no objection?

13          MR. BUNDY:  Well, it was the government's motion to --

14          THE COURT:  I realize that, but your client has an

15   interest in this as well.

16          MR. BUNDY:  Right, and we would prefer that it remain

17   sealed, but we're prepared not to object further, as long as all

18   the documents will be unsealed.

19          THE COURT:  I beg your pardon?

20          MR. BUNDY:  As long as all the documents that were

21   previously sealed will be unsealed.

22          THE COURT:  All right, well, there are --

23          MR. BUNDY:  There's an agreement that was -- that the

24   government had indicated they wanted to continue to be sealed

25   and I understand that they're not asking for that any further.

Case 3:07-cr-00057-JWS   Document 31   Filed 05/19/09   Page 5 of 30

1        THE COURT:  All right, so from your client's

2   perspective if the court unseals the entire record then you have

3   no further objection?

4        MR. BUNDY:  No.

5        THE COURT:  Is the government seeking to have anything

6   that's been filed yet kept under seal?

7        MR. BOTTINI:  No, Your Honor.

8        THE COURT:  Very well, then, it is the court's

9   decision that this matter will proceed on an open record and

10   that the order previously entered sealing this proceeding is

11   vacated.  It's the court's order that this matter will proceed

12   as a public case, as it should in most instances, and it should

13   in this case.  So we'll open the courtroom and, Mr. McKay, if

14   you'd like to invite your clients in --

15        MR. McKAY:  I'll do that, Your Honor.

16        THE COURT:  -- you can tell them you won a big

17   nonopposed victory.

18        MR. McKAY:  All right.  And I apologize for

19   oversimplifying this, but if we could, perhaps, administratively

20   or more formally, if you wish, sometime after and unrelated to

21   this particular proceeding take up this issue, because I think

22   it's inappropriate that a matter of this moment have no --

23   essentially no public notice and it's happened -- this isn't the

24   first time even in the last year or so.  So I would appreciate

25   that opportunity.

T M Transcribing 1980 Commodore Drive Anchorage, Alaska 99507

1    THE COURT:  Well, I think the best thing to do, Mr.

2    McKay, might be to meet with Mr. Cohen and then I'd be happy to

3    meet with the two of you.

4    MR. McKAY:  Sounds good, Your Honor.

5    THE COURT:  And perhaps we should get Mr. Curtner

6    involved as well --

7    MR. McKAY:  All right.

8    THE COURT:  -- so that we have some input from both

9    sides.

10    MR. McKAY:  Good.

11    THE COURT:  But I'd be perfectly happy to do that.

12    MR. McKAY:  Thank you, Your Honor.

13    THE COURT:  All right, we'll open the courtroom doors

14    and invite all who are assembled in the corridor in to --

15    MR. BUNDY:  Your Honor, just one thing.

16    THE COURT:  Yes, sir.

17    MR. BUNDY:  Mr. Allen is very hard of hearing and he

18    can't really hear too well what's going on right now, so if it's

19    not too much of an inconvenience for the court if the --

20    THE COURT:  We have a hearing assistance device.

21    THE DEFENDANT:  I've got my hearing aids, it won't --

22    THE COURT:  Can you hear me now, Mr. Allen?

23    THE DEFENDANT:  Yeah.

24    THE COURT:  Okay, I'll try and speak into the

25    microphone and I'm going to ask that the lawyers either remain

T M Transcribing 1980 Commodore Drive Anchorage, Alaska 99507

seated and speak distinctly into the microphone or, if you prefer, you can stand at the podium, but be sure you're speaking into the microphone so that the defendant can hear clearly what's going on.

Good morning and welcome to those of you who have just come in. In your absence the court has ruled that this matter will proceed on an open record. That means not only is this hearing open to the public but all of the documents previously filed under seal will be unsealed today. I don't think that can be done instantaneously but those matters will be unsealed promptly.

We are here this morning for proceedings in an Anchorage criminal case, it's Case Number 3-07-cr-57, United States versus Bill J. Allen. The purpose of the proceeding this morning is to arraign the defendant on an information, consider whether defendant wishes to waive his right to proceed by indictment, and hear what pleas defendant may choose to enter this morning. Mr. Allen, as you probably know, you do have a right to be represented by a lawyer, and one paid by the government if you cannot afford to hire a lawyer. It's my understanding that you are able to pay for a lawyer and that you have retained Mr. Bundy. Is that correct?

THE DEFENDANT: That's right.

THE COURT: The information filed in this case by the United States at Docket 1 charges you with three crimes. The

T M Transcribing 1980 Commodore Drive Anchorage, Alaska 99507

first is conspiracy in violation of 18 United States Code
Section 371, which is the crime charged in Count 1.  The charge
of conspiracy is one which has multiple unlawful objectives
which are spelled out in detail in Count 1 of the information.
The second crime charged is bribery concerning programs
receiving federal funds in violation of 18 United States Code
Section 666(a)(2) and 18 United States Code Section 2.  That is
the crime charged in Count 2.  Once again, the details are
spelled out in the information.  The third crime is conspiracy
to impede or impair the Internal Revenue Service, which is a
violation of 18 United States Code Section 371.  That is also
charged in the information and set out at Count 3.  The details
of this crime are also explained in the information.

At this time I will read the information to the defendant
unless he wishes to waive the reading of the information.  Mr.
Bundy?

MR. BUNDY:  We'll waive reading, Your Honor.

THE COURT:  Very well.  The -- Mr. Allen, you are not
required to make any statements regarding these charges and if
you've already made statements you need not make any further
statement.  Should you start to make a statement you can stop at
any time.  In a moment you'll be placed under oath and I will
ask you some questions.  If you decide to answer a question, any
statement you do make may be used against you.  Do you
understand that?

1         THE DEFENDANT:  Yes.

2         THE COURT:  The charges against you are all felonies.

3    The conspiracy charge in Count 1 is subject to punishment of

4    incarceration not to exceed five years, plus a fine of up to

5    $250,000, a special assessment of $100, and supervised release

6    following release from custody, which could be for a period as

7    long as three years.  The bribery charge in Count 2 carries a

8    maximum penalty of 10 years in prison, a fine of up to $250,000,

9    a $100 special assessment, and supervised release for up to

10   three years.  The last charge, the conspiracy charge in Count 3,

11   may be punished by imprisonment for up to five years, plus a

12   five of $250,000, a special assessment of $100, and supervised

13   release which may extend up to three years.  Supervised release

14   would involve substantial conditions and restrictions on your

15   liberty.  If you were to violate the terms of supervised release

16   that could release in further incarceration.

17       You have a right to insist that if you are to be charged

18   with any of these serious crimes the charges must be made in an

19   indictment returned by a grand jury.  The charges filed in this

20   case are set out in an information which was prepared by the

21   United States's lawyers.  The information is not an indictment.

22   You may, however, waive your right to proceed by indictment and

23   elect to allow this matter to go forward on the basis of the

24   information.  Before you decide if you wish to do so, I would

25   like to advise you of certain things.

1   If you do not waive the right to proceed by indictment, the
2   government may attempt to obtain an indictment from the grand
3   jury.  The grand jury is composed of at least 16 and not more
4   than 23 persons, at least 12 of them must find that there is
5   probable cause to believe a crime was committed and that you
6   committed it before the grand jury can return an indictment
7   against you.  A grand jury might or might not indict you.  If
8   you waive your right to proceed by indictment this action will
9   proceed against you on the basis of the existing information.
10  All right, at this time I'd like the clerk to give Mr.
11  Allen an oath.

                    BILL ALLEN, DEFENDANT, SWORN

                      VOIR DIRE EXAMINATION

14  THE CLERK:  Thank you, please be seated.  Please speak
15  into that microphone at all times.  Would you please state your
16  full name, spelling your last name?
17  A   Yeah, Bill J. Allen.  Bill James Allen.
18  THE CLERK:  The spelling of your last name, sir?
19  A   A-L-L-L-E-N.
20  THE CLERK:  Thank you.
21  BY THE COURT:
22  Q   Mr. Allen, you've taken an oath pursuant to which you've
23  promised to speak truthfully.  That means if you speak falsely
24  regarding any material matter you could be prosecuted for
25  perjury.  Do you understand that?

Case 3:07-cr-00057-JWS   Document 31   Filed 05/19/09   Page 11 of 30

1    A    Yes.

2    Q    Mr. Allen, have any threats been made to persuade you to

3    waive your right to proceed by indictment?

4    A    No.

5    Q    Have any promises other than the promise -- promises set

6    out in your plea agreement been made to persuade you to give up

7    your right to proceed by indictment?

8    A    No.

9    Q    Have you discussed the issue of waiving your right to

10   proceed by indictment with Mr. Bundy?

11   A    Yes.

12   Q    Do you wish to waive your right to proceed by indictment?

13   A    I'm sorry, one more time.

14   Q    Do you wish to waive your right to an indictment?  Do you

15   want to proceed on the basis of the information?

16   A    Yes.

17        THE COURT:  Very well, we need to have a waiver of

18   indictment form completed.

19        MR. BOTTINI:  Your Honor, actually we have prepared a

20   separate filing, the waiver of indictment filing for Mr. Allen

21   to sign.

22        THE COURT:  All right, very -- very well.

23        MR. BUNDY:  Mr. Allen will sign that, Your Honor.

24        THE COURT:  All right, thank you, Mr. Bundy, Mr.

25   Bottini.  It's a nice touch, Joe, you ought to have that done in

T M Transcribing 1980 Commodore Drive Anchorage, Alaska 99507

1  all the cases.

2          MR. BUNDY:  Your Honor, if I might approach the clerk

3  with the --

4          THE COURT:  Yes, sir.  All right, I have before me a

5  waiver of indictment.  Give me a moment to review it.  All

6  right, Mr. Allen and his lawyer have both signed this.  I think

7  there should've been a blank for my signature, so I'll just sign

8  it here at the bottom.  Very well, we'll have the waiver of

9  indictment filed in the records of this case and we will now

10  proceed with the remainder of the tasks that we need to

11  accomplish this morning.

12  Q    Do you wish to consider entry of pleas to the charges at

13  this time, Mr. Allen?

14  A    Yes.

15  Q    All right, I'm going to ask you some questions of the sort

16  that I routinely ask all persons who appear before this court

17  who are contemplating a plea of guilty.  These questions are

18  intended to make sure that you're aware of the consequences of

19  pleading guilty, if that is what you choose to do, and to be

20  sure that you're competent this morning to make an important

21  decision.  Let me begin by asking you how old you are?

22  A    19 -- I'm 70.

23  Q    How far did you go in school?

24  A    The 10th grade.

25  Q    And what kinds of employment or work activities have you

1  engaged in in the last five years or thereabouts?

2  A    I was the chairman of Veco.

3  Q    Are you -- all right, and for the record could you just

4  briefly tell us what Veco is?

5  A    They're -- they're an engineering and construction company.

6  Q    All right.  And in fact it's a company so large it has

7  millions of dollars in revenue each year, is that correct?

8  A    I'm so sorry.

9  Q    The company is large enough that its annual revenues are in

10  -- measured in the millions?

11  A    Yeah, it's more in the billion.

12  Q    Yes.  Let me ask you this, Mr. Allen.  As you sit here this

13  morning are you suffering from any illness?

14  A    No.

15  Q    Are you suffering from any injury?

16  A    No.

17  Q    Have you ever been treated for addiction to alcohol or any

18  other drug?

19  A    No.

20  Q    As you sit here this morning are you under the influence of

21  alcohol or any drug, including prescription drugs?

22  A    No.

23  Q    Have you ever been treated for any mental illness?

24  A    No.

25  Q    As you know, the government's charges against you are set

1    out in a document called an information.  Did you read it?

2    A    Yes.

3    Q    Did you discuss it with Mr. Bundy?

4    A    Yes.

5    Q    For you to be found guilty of any crime the government must

6    prove to a jury each of the essential elements of the crime it

7    charges beyond a reasonable doubt.  With respect to the

8    conspiracy charged in Count 1, the elements which the government

9    would have to prove are, first, there was an agreement between

10    two or more persons to commit one or more of the following

11    crimes:  Extortion under color of official right, which is a

12    violation of 18 United States Code Section 1951(a); federal

13    programs bribery, which is a violation of 18 United States Code

14    Section 666(a)(1)(B) and 666(a)(2); and, finally, honest

15    services mail and wire fraud in violation of 18 United States

16    Code Sections 1341, 1343 and 1346.  I will refer to that

17    agreement as a conspiracy.

18        The second element the government must prove is you became

19    a member of the conspiracy knowing of at least one of its

20    objectives and with the intent to help accomplish it.  The third

21    element the government must prove is that one of the members of

22    the conspiracy performed at least one overt act for the purpose

23    of carrying out the conspiracy.  Do you have any questions about

24    what the government would have to prove to establish your guilt

25    on Count 1?

Case 3:07-cr-00057-JWS   Document 31   Filed 05/19/09   Page 15 of 30

1   A    Yes.

2   Q    All right, what are your questions?

3   A    No, I'm sorry.  I'm -- really, I can't hear you here.

4   Q    All right, how far -- do I need to repeat the elements?

5   A    No.  I'm sorry, I should've said no.

6   Q    All right, now, I'll give you any time you need to confer

7   with Mr. Bundy.  I just want to be sure, do you have any

8   questions about what the government has to prove to establish

9   your guilt on Count 1?

10  A    No.

11  Q    Now, with respect to the bribery charge in Count 2 the

12  elements which the government must prove are, first, you

13  corruptly gave, offered and agreed to give things of value to

14  elected public officials.  Second, the elected officials were

15  agents of the State of Alaska.  Third, you acted in connection

16  with a business transaction or series of transactions of the

17  State of Alaska which involved something whose value was $5,000

18  or more, and, fourth and finally, you acted during a year when

19  the State of Alaska received benefits in excess of $10,000

20  pursuant to a federal program.  Do you have any questions about

21  what the government would be required to prove to the jury to

22  establish your guilt on Count 2?

23  A    No.

24  Q    With respect to the third charge the elements to be proved

25  are, first, there was an agreement between two or more persons

T M Transcribing 1980 Commodore Drive Anchorage, Alaska 99507

1   to impair and impede the Internal Revenue Service.  I will call

2   that agreement a conspiracy.  Second, you became a member of the

3   conspiracy knowing of at least one of its objects and intending

4   to help accomplish that object.  Third, one of the members of

5   the conspiracy performed at least one overt act for the purpose

6   of carrying out the conspiracy.  Do you have any questions about

7   what the government would have to prove to establish your guilt

8   on that charge?

9   A    No.

10  Q    Earlier I advised you as to what the maximum penalties for

11  the charges against you would be.  Have you discussed the extent

12  of possible punishment with Mr. Bundy?

13  A    Yes.

14  Q    The court may impose any lawful sentence up to and

15  including the maximum provided by law.  The court must consider

16  statutes enacted by Congress and guidelines published by the

17  United States Sentencing Commission when deciding what

18  punishment to impose if you choose to plead guilty.  Have you

19  discussed how the statutes and guidelines might apply to you

20  with Mr. Bundy?

21  A    Yes.

22  Q    Is Mr. Bundy aware of all the facts that would be important

23  in defending you against the government's charges?

24  A    Yes.

25  Q    Has your lawyer answered any questions you may have asked

1  him?

2  A    Yes, he did.

3  Q    Are you satisfied with his services as your lawyer?

4  A    Yes.

5  Q    Have you had discussions with Mr. Bundy about pleading

6  guilty to the three counts in the information?

7  A    Yes.

8  Q    Did those discussions eventually lead to a written document

9  called a plea agreement?

10  A    Yes.

11  Q    Did you read it?

12  A    Yes.

13  Q    Did you discuss it with Mr. Bundy?

14  A    Yes.

15  Q    Did you sign it, Mr. Allen?

16  A    Yes.

17  Q    In this case there is also an addendum to the plea

18  agreement entitled "Factual Basis for Plea" which is

19  incorporated into the plea agreement by reference.  Did you read

20  the factual basis addendum?

21  A    Yes.

22  Q    Did you discuss it with Mr. Bundy?

23  A    Yes.

24  Q    Did you sign it?

25  A    Yes.

1    Q    In this case there is a cooperation agreement which is part

2    of what you and the government have agreed upon.  It is entitled

3    "Second Addendum to Plea Agreement, Cooperation Agreement."

4    Have you read that document?

5    A    Yes.

6    Q    Have you discussed it with your lawyer?

7    A    Yes.

8    Q    Have you signed it?

9    A    Yes.

10    Q    The plea agreement together with the two addenda which have

11    been filed in this case appears to include the following basic

12    bargain:  You agree to plead guilty to the conspiracy charge in

13    Count 1; you agree to plead guilty to the bribery charge in

14    Count 2; you agree to plead guilty to the conspiracy charge in

15    Count 3; you admit that the facts set out in the document

16    entitled "Factual Basis for Plea" are true; you agree to

17    cooperate with the government to the extent and subject to all

18    of the terms set out in the document entitled "Second Addendum

19    to Plea Agreement, Cooperation Agreement;" you agree not to seek

20    any downward departure from your guideline sentencing range once

21    it has been correctly determined; finally, you agree to waive

22    your right to appeal your sentence and to collaterally attack

23    your sentence and conviction on any grounds except that your

24    plea was not actually voluntary or that you did not actually

25    have effective assistance from your lawyer.

1    In exchange the government agrees to recommend a downward

2  adjustment in your guideline offense level for acceptance of

3  responsibility.  It also agrees not to seek any upward departure

4  from your guideline sentencing range once it is correctly

5  determined.  Finally, the government agrees to evaluate your

6  cooperation and good faith and in its sole discretion determine

7  whether or not to make a motion asking the court to reduce your

8  sentence based on the value of that cooperation.

9    Have I correctly described the basic agreement you have

10  with the government?

11  A    Yes.

12    MR. BUNDY:  Your Honor, I -- may I just be heard

13  briefly?

14    THE COURT:  Yes, you may.

15    MR. BUNDY:  Two things.  First of all, there are other

16  considerations reflected in the plea agreement under other

17  considerations, and, second, with regard to downward departures

18  it's -- it's our understanding that 18 USC 3553(a) will control

19  the court's discretion as under Ninth Circuit precedent to

20  determine the sentence at the time of sentencing.

21    THE COURT:  Well, with regard to your second point

22  that is of course true and my reference to departures had only

23  to do with guideline-based departures.  At any sentencing these

24  days the government and the defendant may argue anything that

25  they believe is appropriate under 3553(a) unless there's some

1    agreement between them that they won't.

2                MR. BUNDY:  Thank you, Your Honor.

3                THE COURT:  Now, with regard to your other point I'm

4    not quite sure I understood.  Can you tell me what those other

5    considerations are?

6                MR. BUNDY:  I think they're reflected in the plea

7    agreement on Page --

8                THE COURT:  Just give me a moment.

9                MR. BOTTINI:  Your Honor, I believe it's --

10               MR. BUNDY:  Page 15, Your Honor, sub -- paragraph D.

11               THE COURT:  15, D?

12               MR. BUNDY:  Yes.

13   Q    All right, Mr. Allen, there is another consideration that

14   Mr. Bundy has called to my attention, which is that if -- if the

15   cooperation you provide to the government proves satisfactory to

16   the government, then it will not charge your son Mark Allen or

17   other family members -- that is, other members of your family --

18   with any criminal offense arising out of the government's

19   investigation, and the government will view your cooperation as

20   also being cooperation on the part of Veco.  You understand

21   that?

22   A    Yes.

23               THE COURT:  Are there any other considerations beyond

24   those that I've just gone over?  All right, thank you for

25   mentioning that, Mr. Bundy.  All right.

1  Q    Mr. Allen, do you understand that by waiving your rights to
2  appeal and to collaterally attack your sentence by filing a
3  habeas corpus petition or a motion under 28 USC 2255 you are
4  giving up important rights?
5  A    Yeah, I understand.
6  Q    All right.  Now, do you understand that by making these
7  waivers you are accepting any sentence the court imposes so long
8  as it's consistent with your plea agreement?
9  A    I'm sorry, Your Honor.
10  Q    Let me back up.
11  A    Say it one more time, I'm sorry.
12  Q    Yeah.  You understand you waived your right to appeal,
13  correct?
14  A    Yes.
15  Q    Now the consequence of that is any sentence I impose cannot
16  be appealed, you understand that?
17  A    Yes.
18  Q    All right.  There are other details in your plea agreement
19  in addition to the ones that I summarized.  I know that you've
20  discussed the documents that are pertinent with your lawyer, but
21  you might still have some questions or concerns about your plea
22  agreement or the addenda to it.  Do you have any questions or
23  concerns at this time?
24  A    No.
25  Q    Mr. Allen, has anyone promised you anything not contained

T M Transcribing 1980 Commodore Drive Anchorage, Alaska 99507

1 in your plea agreement to persuade you to plead guilty?

2 A    No.

3 Q    Mr. Allen, has anyone made any threat to persuade you to

4 plead guilty?

5 A    No.

6 Q    You are considering pleading guilty to felony charges.  In

7 most jurisdictions felons lose the right to vote, the right to

8 serve on juries, the right to hold public office, and the right

9 to possess firearms.  Do you understand these consequences of

10 pleading guilty?

11 A    Yes.

12 Q    As part of your sentence I must impose special assessments

13 of $100 per count, which would total $300.  That's separate and

14 apart from any fine that might be imposed.  As I mentioned

15 earlier, each of the crimes charged in Counts 1 and 3 carries a

16 maximum penalty of five years in prison and a $250,000 fine,

17 plus supervised release for up to three years.  Count 2 carries

18 even heavier potential penalties, a maximum penalty of 10 years

19 in prison, a fine of $250,000 and three years of supervised

20 release.

21      Supervised release is a period of formal supervision which

22 would involve a number of significant restrictions on your

23 liberty.  It would include regular reporting and compliance with

24 the conditions of supervision.  If you violate any of the terms

25 and conditions of supervised release that could result in being

1    incarcerated for a further period of time.  Do you understand

2    that?

3    A    Yes.

4    Q    The sentence which is imposed might be harsher than the one

5    you're hoping for or even the one the government recommends.  If

6    that happened you'd still be bound by a plea of guilty and

7    unable to withdraw that plea so long as the punishment was

8    consistent with the plea agreement.  Do you understand that?

9    A    Yes.

10   Q    You have a right to maintain a plea of not guilty and to

11   proceed to trial.  At that trial you'd be entitled to have a

12   lawyer and the government would pay the lawyer if you couldn't

13   afford to.  You'd have a right to see and hear all the

14   government's witnesses and to have them cross examined by your

15   lawyer.  You could compel other people to attend the trial to

16   testify.  You might choose to testify in your own defense, but

17   of course you also have a right under the Fifth Amendment to the

18   Constitution not to incriminate yourself.  In the exercise of

19   that right you might choose not to testify.  If you did choose

20   not to testify your decision could not be used against you in

21   any way.  If you choose to plead guilty you'll lose all the

22   rights you would otherwise enjoy at trial.  Do you understand

23   that?

24   A    Yes.

25           THE COURT:  As required by statute, I need to inquire

T M Transcribing 1980 Commodore Drive Anchorage, Alaska 99507

1   at this time whether there's any victim known to the government

2   who -- of these crimes who would like to be heard at this

3   proceeding.

4          MR. BOTTINI:  No, there's not, Your Honor.

5          THE COURT:  At this time, then, I would like the

6   attorney for the United States to state for the record whether

7   or not the United States is prepared to present evidence

8   sufficient to prove beyond a reasonable doubt all the facts

9   which are recited in the document entitled "Factual Basis for

10  Plea."

11         MR. MARSH:  Yes, Your Honor.  Had this case gone to

12  trial the government would have proved beyond a reasonable doubt

13  and with competent evidence the factual statements set forth in

14  the factual basis for the plea.

15  Q    Mr. Allen, you said earlier you read the document entitled

16  "Factual Basis for Plea" and discussed it with Mr. Bundy.  Are

17  the facts set out in that document true?

18  A    Yes.

19         THE COURT:  Mr. Allen, how do you plead to the charge

20  in Count 1?

21         THE DEFENDANT:  Guilty.

22         THE COURT:  How do you plead to the charge in Count 2?

23         THE DEFENDANT:  Guilty.

24         THE COURT:  How do you plead to the charge in Count 3?

25         THE DEFENDANT:  Guilty.

1    THE COURT:  It is my finding that Mr. Allen is fully

2    competent and capable of entering informed pleas and that each

3    of his pleas is a voluntary plea supported by an independent

4    basis in fact containing each of the essential elements of each

5    of these three offenses.  For these reasons his plea of guilty

6    to Count 1 is accepted, his plea of guilty to Count 2 is

7    accepted and his plea of guilty to Count 3 is accepted.  The

8    defendant is adjudged guilty on all three.

9    Mr. Allen, a written presentence report will be prepared by

10   the probation office, you'll be asked to give information for

11   that report.  Your attorney may be present when you do that.

12   You'll be able to read the report and discuss it with your

13   lawyer before you're sentenced, and your lawyer and you will

14   each have an opportunity to speak at the sentencing hearing.  I

15   reserve approval of the plea agreement until after I consider

16   the presentence report.  Although I have reserved approval of

17   the plea agreement, you may not withdraw your guilty pleas, Mr.

18   Allen, unless I later reject the plea agreement or you show a

19   fair and just reason for doing so under Rule 11(b)(2) of the

20   Federal Rules of Criminal Procedure.

21   At this time Mr. Allen is referred to the probation service

22   for a presentence investigation and report.  A sentencing

23   hearing will be held in this court on a date to be set in a

24   later order.  The defendant is cooperating with the United

25   States in its on-going investigation of public corruption, so

T M Transcribing 1980 Commodore Drive Anchorage, Alaska 99507

1  the date for the sentencing hearing will be set in an order

2  further -- further along in the year.  I have directed the

3  parties to advise me of an appropriate date in the notice which

4  they are to file no later than October 1, 2007.

5      I'll take this opportunity to remind the lawyers that under

6  Rule 32 of the Federal Rules of Criminal Procedure if you have

7  any objections to factual statements in the presentence report

8  you must raise them with the author of the report.  If you don't

9  do that I won't consider them at the time of sentencing unless

10  you can show good cause for the failure to timely raise the

11  objection.

12      At this time we need to consider bail conditions.  I need

13  to inquire what conditions the United States may recommend.

14          MR. MARSH:  Your Honor, the government would request a

15  $10,000 unsecured bond as its release condition.

16          THE COURT:  A $10,000 unsecured bond?

17          MR. MARSH:  Yes, Your Honor.

18          THE COURT:  It would be my intention to include some

19  additional conditions, such as regular reporting to the

20  probation service and the surrender of passports and the like.

21          MR. MARSH:  Your Honor, with respect to the surrender

22  of passports, the government does not object to the defendant

23  being able to retain his passport and travel freely.

24          THE COURT:  All right, what about the regular

25  reporting to the probation officer?

T M Transcribing 1980 Commodore Drive Anchorage, Alaska 99507

1     MR. MARSH:  The government agrees with the court that

2   that should be required.

3          THE COURT:  And do you seek any travel restrictions?

4          MR. MARSH:  No, Your Honor.

5          THE COURT:  Are you asking that the court order him to

6   avoid contact with any other persons?

7          MR. MARSH:  Your Honor, in this case the government

8   does not believe that's necessary.

9          THE COURT:  All right.  So the $10,000 unsecured bond

10   and weekly reporting to the pretrial services by telephone is

11   all that the government seeks?

12          MR. MARSH:  Yes, Your Honor, that's correct.

13          THE COURT:  Mr. Bundy, do you have any objections to

14   those conditions?

15          MR. BUNDY:  No, Your Honor.

16          THE COURT:  Do we have an order?  (Pause)  Mr. Bundy,

17   I have two documents for you to review with your client.  The

18   first is the order setting conditions of release, the second is

19   the appearance bond itself.

20          MR. BUNDY:  Your Honor, if we could approach the

21   clerk?

22          THE COURT:  Yes, sir.

23          MR. BUNDY:  Sorry, I forgot a page.

24          THE COURT:  Yeah, the bond is also not dated, Mr.

25   Bundy.  Thank you.  Mr. Allen, you've signed an order setting

Case 3:07-cr-00057-JWS   Document 31   Filed 05/19/09   Page 28 of 30

1    conditions of release.  The conditions are that you promise to

2    appear at all proceedings as required and to surrender to

3    service of any sentence imposed, that you execute a $10,000

4    unsecured bond, and that you report to pretrial services once a

5    week.  Do you understand those conditions?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Now, if you violate those conditions that

8    would result in your arrest, do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  All right, I'm going to sign the document

11   and have it filed in the records of the court.  And Mr. Allen

12   has also signed a appearance bond in the amount of $10,000, so

13   we'll have that filed as well.  Is there anything further that

14   either of the parties wishes to bring to the court's attention

15   at this time?

16             MR. MARSH:  Not from the United States, Your Honor.

17             THE COURT:  Thank you, sir.  Mr. Bundy?

18             MR. BUNDY:  No, Your Honor.

19             THE COURT:  Very well, then we will adjourn pending

20   the next proceeding.

21        (Proceedings adjourned, 9:50:24 a.m.)

22

23

24

25

T M Transcribing 1980 Commodore Drive Anchorage, Alaska 99507

1                    C E R T I F I C A T I O N

2        I, Teresa E. Mielke, court approved transcriber, certify

3    that the foregoing is a correct transcript from the official

4    digital sound recording of the proceedings in the above-entitled

5    matter.

6

7        /s/ Teresa E. Mielke

8    Teresa E. Mielke                                    May 15, 2009

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

T M Transcribing 1980 Commodore Drive Anchorage, Alaska 99507