# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 3:07-cr-00057-JWS |
| BILL J. ALLEN, | |
| Defendant. | |

## UNITED STATES OF AMERICA'S
## SENTENCING MEMORANDUM

The United States of America, by and through its undersigned attorneys, submits this Memorandum in Aid of Sentencing in anticipation of the sentencing of defendant Bill J. Allen, on October 28, 2009.

## I. FACTUAL SUMMARY

On May 7, 2007, the defendant pleaded guilty to a three-count Information charging him with (1) conspiracy to commit extortion under color of official right, to commit federal programs bribery, and to commit honest services mail and wire fraud; (2) federal programs bribery; and (3) conspiracy to impair and impede the Internal Revenue Service.

As set forth in the factual background included in the Presentence Report ("PSR"), the defendant was the pivotal figure in a conspiracy that lasted from 2002 to 2006, which included a series of corrupt acts that were designed to, and did, influence the Alaska legislature, particularly during and around its 24th Session in 2006. The PSR describes Allen's unlawful activity in paragraphs 6 through 91. In sum, defendant Allen, representing VECO, curried favor with various State and federal legislators and awarded them with cash and other items of value so they would be favorably disposed toward voting for legislation that was of interest to VECO and the oil

industry. Over a period of years, Allen corruptly provided thousands of dollars worth of money and services to Alaskan politicians and during the regular and special sessions of the Alaska legislature in 2006, those politicians pursued VECO's agenda when dealing with the then-pending 20/20 PPT tax legislation. The actions of Bill Allen were corrupt, sustained, and damaging to the integrity of the legislative process.

The sentence in this case should punish this defendant and deter other individuals from similarly corrupting the legislative process. It is the government's position that these and other sentencing goals would be served by imposition of a sentence in the vicinity of 46 months, followed by supervised release for three years, and a fine of $750,000.

## II.     SENTENCING GUIDELINES CALCULATIONS

In the plea agreement between defendant Allen and the United States, the government provided a non-binding "rough estimate" of the applicable sentencing guideline factors (the "government's initial estimate"). For the reasons set forth below, the United States largely continues to adhere to this initial estimate, with the modifications described below.

### A.     "Loss" Amount

The law is clear that the net value or loss determination must include relevant conduct under U.S.S.G. § 1B1.3. The guidelines provide that the base offense level and specific offense characteristics "shall be determined" on the basis of "all acts and omissions committed ... by the defendant ... that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1)(A). The guidelines calculation also must include "all acts and omissions [by the defendant] that were part of the same course of conduct or common scheme or plan as the offense of conviction," where the offense level is determined largely on the basis of the total amount of harm

2

or loss or other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature. *See* U.S.S.G. § 1B1.3(a)(2). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose or similar *modus operandi*." U.S.S.G. § 1B1.3, Application Note 9(A). "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id*., Application Note 9(B). The government bears the burden of proving the facts supporting these amounts by a preponderance of the evidence, and the court must make a reasonable estimate of the loss based upon available information. *United States v. Zolp*, 479 F.3d 715, 718-19 (9th Cir. 2007). The loss need not be determined with precision. *Id*.

The government agrees that the PSR accurately describes the total amount of the bribe payments (which is a lower figure than the non-binding calculation that was set forth in the plea agreement). Specifically, while Allen did admit to making illegal payments exceeding $400,000, the government concedes that only a portion of that amount should be treated as the amount of bribes for purposes of determining the specific offense characteristic under U.S.S.G. § 2B1.1(b)(1), because there are two distinct corruption schemes at issue. The first scheme involved the efforts of Allen (and Rick Smith) to corruptly influence and reward various state public officials for official action related to the 20/20 petroleum production tax legislation. The second scheme centered on the efforts of Allen (and Smith) to corruptly influence and reward two federal public officials for official action beneficial to VECO.

Because only the scheme involving state officials was charged, the government agrees that

3

only the amounts set out in paragraph 105 of the PSR should be used to determine the total value of the bribes paid out. The PSR, in paragraph 107, calculates the total value of known benefits to be just over $395,000. As a result, the base offense level should be adjusted upward by 12 levels.

### 1. Defendant's Challenge to Guideline Calculations Based Upon Claims of Immunity is Without Merit

Counsel for Mr. Allen filed objections to the PSR on October 8, 2009. Counsel argues that the execution of a proffer letter, operating within U.S.S.G. § 1B1.8, precludes the Court from relying upon the stipulated statement of facts in calculating the adjusted offense level. Thus, he contends, the government must establish "an independent source of such information" to support its guideline calculations. Counsel asserts that it "joins the government in objecting to inclusion of information from the Stipulated Facts signed by defendant..." and claims the "Stipulated Facts were never filed with the Court." (White & Case letter, page 3). Both of these claims are incorrect. The government has not objected to the use of the stipulated facts by the United States Probation Office or the Court. And, the stipulated facts were in fact filed with this Court, as part of Mr. Allen's plea agreement, on May 4, 2007. Indeed, Mr. Allen has repeatedly acknowledged that the stipulated facts were part of his guilty plea, including during the guilty plea colloquy itself:

> Q   Mr. Allen, you said earlier you read the document entitled "Factual Basis for Plea" and discussed it with Mr. Bundy. Are the facts set out in that document true?
>
> A   Yes.

05/07/2007 Plea Tr. at 25.

The fact of the matter is that defendant Allen pleaded guilty, engaged in an extensive Rule 11 colloquy with the Court, and accepted without objection the stipulated facts that support his guilty plea as well as the sentencing guideline factors. An objection to the *source* of such

4

information could and should have been made during plea negotiations or at the time of the Rule 11 proceeding itself. Given that no contemporaneous objection was made by Allen's experienced counsel, this Court can and should fairly rely upon the stipulated facts. There is no basis for Mr. Allen to now raise belated claims of immunity or to suggest that the stipulated statement of facts in his own guilty plea cannot be fairly used in calculating his guidelines range.

### 2. Defendant's Challenge to Inclusion of the Payments to State Senator B is Also Without Merit

The primary series of payments in the PSR that form the basis of establishing a benefit in excess of $200,000 are Allen's payments to State Senator B. Defense counsel has now urged the United States Probation Office to either disregard these payments or create a "pro rata" limit of roughly $60,000. However, the plea agreement, coupled with an extensive and fair Rule 11 colloquy, leaves no room for that argument. The plea agreement expressly refers to those payments as corrupt, the specific amounts of the payments were clearly established, and Allen has himself subsequently testified that the State Senator B "consultation" services were a sham. *See* Kott Trial Tr. Vol. 8, pp. 13-27. Those payments should be included in calculating the guidelines range.

### 3. Bribes versus Gratuities

Allen also objects that "the government has failed to identify evidence independent of the Factual Basis, or any evidence otherwise, that the payments made by Mr. Allen to state legislators were bribes, rather than gratuities." PSR, p. 63. Allen argues that if the payments were gratuities instead of bribes, his base offense level would be reduced by two levels. But this argument ignores the posture of the case. Here, as noted by the Probation Officer in rejecting Allen's argument, Allen has pleaded guilty to, among other things, conspiracy to commit extortion under color of official right, conspiracy to commit bribery, and bribery concerning programs receiving federal funds.

Allen's own admissions in the Factual Basis and the extensive plea colloquy support Allen's guilt on these charges. Thus, there is no need to "identify evidence independent of the Factual Basis" to prove at sentencing what Allen plainly admitted in his guilty plea: Allen's payments were bribes.

### B. More than One Bribe

There does not appear to be any dispute that the conduct of the defendant included more than one bribe/extortion. Accordingly, pursuant to U.S.S.G. § 2C1.1(b)(1), the adjusted offense level is raised by two, to level 26.

### C. Public Official

Again, there does not appear to be any dispute that pursuant to U.S.S.G. § 2C1.1(b)(3), the corruption scheme involved an elected official. Consequently, the adjusted offense level is raised to level 30.

### D. Role in the Offense

At the time of the execution of the plea agreement, the government included a non-binding "rough estimate" in the agreement of the applicable guideline factors that were thought to apply to Mr. Allen's case. In particular, the United States estimated at the time that a two-level role adjustment, pursuant to U.S.S.G. § 3B1.1(c), would apply, as he "was an organizer, leader, manager, or supervisor" as provided under that guideline. While the stipulated statement of facts does not separately address the factual basis for that role adjustment, those stipulated facts certainly establish a basis for such a role adjustment, as does other evidence at previous trials, such as the T-III intercepts played during the trials of both Kott and Kohring. *See, e.g.*, Factual Basis For Plea at 3-9 (describing how elected officials, acting at Allen's behest, would take official actions "to support particular pieces of legislation requested by Allen" or otherwise "take official acts to further

VECO's political objectives").

Taking all of that information, the U.S. Probation Office concludes that a four-level upward adjustment is appropriate. In particular, it concludes that a two-level upward adjustment is appropriate (paragraph 122) based solely upon the operation of the "special bonus program" at VECO. That program falsely included reimbursed political contributions as business expenses within Federal income tax returns. In addition, the PSR concludes that for counts one and two of the indictment, a four-level upward adjustment, pursuant to U.S.S.G. § 3B1.1(b), applies because Allen was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive (paragraph 113). The government believes that a four-level adjustment is not inappropriate here.

The application of this adjustment requires the Court to make two findings: (1) a status determination regarding the defendant's position relative to another criminal participant; and (2) a scope determination — that the defendant participated in criminal activity that met either the numerosity or the extensiveness benchmarks established by the Sentencing Guidelines. *United States v. Tejada-Beltran*, 50 F.3d 105, 111 (1st Cir. 1995). First, nothing has cast doubt on the government's initial conclusion that Mr. Allen was an organizer or leader of the criminal activity at issue. Upward adjustments under § 3B1.1(a) are appropriate in "cases involv[ing] defendants who, the evidence show[s], exercised some degree of control or organizational authority over others." *United States v. Avila*, 95 F.3d 887, 890 (9th Cir.1996) (citing cases). Such control or authority is "precisely what distinguishes a leader or an organizer [under § 3B1.1(a)] from a manager or supervisor" under § 3B1.1(b). *Id.* at 890 n. 6. The Factual Basis, as well as other evidence at previous trials, clearly establish that, as the head of VECO, Mr. Allen "exercised some

7

degree of control or organizational authority" over the public officials who took official acts at his behest. *See, e.g.*, Kott Trial Tr. Vol. 12, pp. 111-13 (Kott explaining to Allen and Smith that he worked to defeat an amendment to the PPT that VECO opposed because Allen asked him to do so, declaring, "I had to get 'er done. So, I had to come back and face this man right here [pointing to Allen]. I had to cheat, steal, beg, borrow, and lie."; Allen responding, "I own your ass."). Moreover, there is no serious doubt that Mr. Allen's criminal activity clearly involved five or more participants. *See* Factual Basis For Plea at 3-9.[1]

\* \* \* \* \*

In sum, the government believes that with a base offense level of 12, then adding the aforementioned enhancements of 22 levels, and applying a three-level reduction for acceptance of responsibility, the total offense level should be 31. Given Mr. Allen's Criminal History Category I, the applicable advisory guidelines range therefore should be 108-135 months of imprisonment. Given Mr. Allen's substantial assistance, the government is filing contemporaneous with this memorandum a motion for reduction, pursuant to U.S.S.G. § 5K1.1, which recommends a downward departure of eight levels. This departure would reduce Mr. Allen's total offense level to 23, and

---

[1] The government appreciates that Allen may colorably claim that his corruption scheme was not as extensive as the type of scheme anticipated by this guideline adjustment because of the arguably "segmented" nature of his bribery (i.e., Allen may claim that he had a common goal in bribing officials, but none of the bribed legislators necessarily knew about that common purpose). However, in light of the Factual Basis and other evidence in previous trials such as the Title III recordings, the government does not agree.

Moreover, the government submits that whatever role adjustment the court deems appropriate here, that adjustment should take into account the guidelines calculations for Rick Smith. Given their relative culpabilities, it is the government's view that Smith should not have a larger role adjustment than Allen.

results in an advisory guidelines range of 46-57 months of imprisonment. Given that range, the government believes that a sentence of 46 months imprisonment is fair and appropriate.

### III.     THE APPROPRIATE FINE

Each of the counts of conviction in this case permit the Court to order a fine in the amount of $250,000. As detailed in the PSR, there is no question about the defendant's ability to pay. Consequently, and in light of the sentencing factors discussed below, the United States contends that there is no reason not to impose the maximum fine as provided by law.

### IV.     CONSIDERATION OF SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

After calculating the proper guideline range, the court must "give serious consideration to the extent of any departure from the Guidelines," and then "explain [the] conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009) (parallel citations omitted). Thus, the district court must consider both the seven § 3553(a) factors and the Guidelines when imposing sentence. *Id.* In this case, a sentence within the guidelines range adequately serves the goals of punishment that are set forth in section 3553. For that reason, the government does not believe that a variance is necessary or warranted.

In imposing a final sentence, the court must consider: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes, and to provide the defendant with needed training or other correctional treatment; (3) the kinds of sentences available; (4) the guideline range; (5) policy statements by the Sentencing Commission; (6) the need for unwarranted

9

sentence disparities; and (7) the need for restitution to the victim of the offense. *See* 18 U.S.C. § 3553(a).

The nature and circumstances of this offense warrant a serious sentence. The defendant routinely and knowingly engaged in corruption for profit. The defendant's conduct was no mere lapse of judgement. It was a calculated effort to obtain what he, VECO, and VECO's clients, wanted regardless of the costs. As a result of Mr. Allen's actions, Alaska's legislative process, on both the state and federal level, was seriously undermined.

A sentence of imprisonment, in the vicinity of 46 months, would promote respect for the law while, at the same time, take into consideration Mr. Allen's cooperation with the government. Mr. Allen was a central figure in the Alaska corruption probe. He also immediately decided to cooperate with investigators and prosecutors, and, as is described in the government's contemporaneously-filed motion for reduction of sentence, his cooperation was substantial. As with many of the figures in the related corruption prosecutions, the sentences that this Court imposes have been, and will continue to be, well-publicized and will have a deterrent effect. In balancing the criminal conduct of the defendant with his immediate and extensive cooperation, the United States would suggest that the sentencing guidelines fairly determine that imprisonment remains an appropriate sentence, and that meting out a term of imprisonment will help promote respect for the law. In fact, a sentence that does not include a term of imprisonment could send a message that a fine is nothing more than a transaction cost for engaging in public corruption.

While restitution is not an issue in this case, the government reiterates that a maximum fine is just and appropriate. As described above, the United States sees no reason why this Court should not impose the maximum fine, $750,000, as a part of the sentence.

In short, and as the government will describe in more detail at the sentencing proceeding, the defendant deserves a term of imprisonment that reflects the consideration of all factors under 18 U.S.C. § 3553(a). Subject to the Court's ultimate determination of the applicable advisory guideline range, the United States respectfully submits that a sentence including 46 months of imprisonment fairly addresses the sentencing guidelines and factors under § 3553(a).

## **CONCLUSION**

For the reasons described herein, the government respectfully submits that the Court should impose a sentence within the applicable guideline range, which, if the Court accepts the government's recommendation regarding defendant Allen's cooperation, would allow for a sentence of 46 months of imprisonment, a $300 special assessment, three years of supervised release, and a fine of $750,000.

Respectfully submitted,

LANNY A. BREUER
Assistant Attorney General


 /s/ James M. Trusty
JAMES M. TRUSTY
Deputy Chief, Gang Unit

KEVIN R. GINGRAS
Attorney, Appellate Section

PETER M. KOSKI
Trial Attorney, Public Integrity Section
Criminal Division
U.S. Department of Justice


Dated: October 21, 2009

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this date, I caused a true and correct copy of the foregoing Sentencing Memorandum to be electronically filed and it is available for viewing and downloading from the ECF system.

                                              /s/ Kevin R. Gingras
                                              KEVIN R. GINGRAS
                                              U.S. Department of Justice

Dated: October 21, 2009